## HESNARD v. PLUNKETT *et al.*

1. Under the homestead and exemption laws of this state in force prior to the amendment of the exemption law by the act of 1890, a single person, though not the head of a family, in the actual occupancy of a homestead, as defined in chapter 23 of the Political Code, was entitled to claim the same as a homestead, and hold the same exempt from forced sale on execution.

2. One who claims a government homestead under the laws of the United States, embracing 160 acres, and is settled upon and occupying the same for the purpose of acquiring the government title thereto, cannot, before he is entitled to a patent therefor, hold a homestead under the state law, embracing 19 acres of such government homestead claim and 141 acres of a pre-emption claim for which a patent has been issued to him, and from which he removes to the land embraced in his government homestead claim.

(Syllabus by the court. Opinion filed Oct. 4, 1894.)

Appeal from circuit court, Custer county.　HON. WILLIAM GARDNER, Judge.

Action to recover possession of certain land.　From an order sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*Martin & Mason*, for appellant.

・A debtor may claim a homestead in lands occupied by him as a co-tenant only.　Oswold v. McCauley, 6 Dak. 289; 42 N. W. 769.　A person in possession of lands under a contract for their purchase has an interest in the land to which a homestead right will attach.　Myrick v. Bill, 5 Dak. 167.

*Wood and Buell*, for respondents.

A party who has settled upon and is occupying lands under the homestead laws of the United States cannot claim a homestead in other lands.　Donaldson v. Lamphrey, 11 N. W. 119; Jarvis v. Moe, 38 Wis. 440; Williams v. Moody, 28 N. W. 510; Newman v. Franklin, 28 N. W. 579.

CORSON, P. J.　This was an action to recover possession of 140 acres of land alleged to be unlawfully withheld by defendants.　The defendants demurred to the complaint on the following grounds, among others: "(1) Said complaint does not state facts sufficient to constitute a cause of action herein in favor of the plaintiff and against the defendants.　(2) It appears upon the face of the complaint that the plaintiff is not such person as can claim a homestead under the exemption laws of the territory of Dakota, now state of South Dakota. (3) It appears on the face of the complaint that before the land described in the complaint, and claimed by the plaintiff as his homestead under the exemption laws of the territory of Dakota, now state of South Dakota, was levied on, and sold under execution by the defendants herein, the plaintiff had abandoned his homestead thereon by entering an ajacent quarter section of land under the homestead laws of the United States."　The

complaint is quite lengthy, and containes a full history of the plaintiff's title, and the title under which the defendants claim to withold the property; but, in the view we take of the case, we do not deem it necessary to do more than state briefly the substance of the allegations of the same. It is alleged in the complaint that the 141 acres of land in controversy in this action constituted a part of plaintiff's pre-emption claim, for which he had received a United States patent, and was claimed and held by him as a homestead since 1885, under the laws of the territory of Dakota. It further appears from the complaint that the pre-emption claim originally embraced 160 acres, and that plaintiff had disposed of 19 acres of the same, and included in said homestead 19 acres held by him under a United States homestead claim contiguous to said 141 acres. It further appears that the government homestead, of which the 19 acres are a part, claimed by the plaintiff, embraces 160 acres; that he still claimed to hold his government homestead, including the 19 acres on which his improvements were made, and on which he has resided since he sold the 19 acres of his pre-emption claim. The plaintiff further alleges that at the time he acquired said homestead he was a widower, having previously married, and that his wife died prior to his acquiring title to or occupation of said pre-emption claim and homestead, and that he has ever since remained unmarried. It is not distinctly stated that plaintiff has no children, but counsel for appellant, in their brief, admit that he had none, and we assume such to be the fact. It is further alleged that the defendants withhold the possession of said 141 acres from plaintiff by virtue of a sale made under a judgment recovered by the defendants against the plaintiff, which he alleges is invalid for the reason that said 141 acres so claimed by defendants constituted a part of plaintiff's said homestead held by him under the laws of the said territory, and were therefore exempt from forced sale on execution. Two important questions are therefore presented by the demurrer: First. Could a single person, not the head of a

family, hold a homestead, under the law as it existed prior to amendment of 1890, exempt from forced sale on execution? Second. Could a homestead embrace a portion of a United States homestead claim, on which the party resides in order to acquire the government title, and 141 acres of a pre-emption claim, for which he held a government patent, the two parcels being contiguous?

The appellant (the plaintiff in the court below) contends that under the provisions of chapter 23 of the Political Code the plaintiff, though a single person and not the head of a family, was entitled to claim and hold a homestead under the homestead law as it stood prior to the amendment of 1890. The two sections mainly relied on by appellant are sections 2449 and 2467, Comp. Laws, which read: "The homestead of every family resident in the territory as hereinafter defined, whether such homestead be owned by the husband or wife so long as it continues to possess the character of a homestead, shall be exempt from judicial sale, from judgment lien, and from all mesne or final process issued from any court." Section 2467: "Every family, whether consisting of one or more persons, in actual occupancy of a homestead as defined in this chapter, shall be deemed and held to be a family within the meaning of this chapter." It will be observed that by section 2449 "the homestead of every family" as thereinafter defined, shall be exempt. The learned counsel for appellant contends that by the provisions of section 2467 one person, though not the head of a family actually occupying a homestead, as defined in that chapter, constitutes a family, and is entitled to his homestead exemption, and he says: "It is evident from the section that a family may consist of one person only. When can this be? The section itself answers: When 'in the occupancy of the homestead.' The plaintiff is a widower, without children. He is one person. But the complaint alleges that he is, and has been since March, 1885, prior and subsequent to the defendants' sale, living upon, and in the actual occupancy of, the premises claimed by him as exempt. He is therefore a 'family,' within section 2467."

The learned counsel for respondents contend that the provisions of section 2450, which provides that "a widow or widower, though without children, shall be deemed a family while continuing to occupy the house used as such, at the time of the death of the husband or wife," constitute the only cases in which a single person could claim a homestead, and that the clause, "whether consisting of one or more persons," was intended to include such widow or widower only, and cannot be fairly extended to include any other single person, not the head of a family. We are inclined to the opinion that the contention of the appellant is the correct one. By an examination of the territorial legislation upon the subject of homestead exemptions, it appears that the first homestead exemption law was passed by the territorial legislature in 1862 (chapter 37, Laws 1862). By that act it was provided "that a homestead belonging to any man or woman resident of this territory, and the dwelling house," etc., should not be subject to sale. This law remained in force until 1875, when the territorial legislature repealed the law of 1862, and enacted a new law (chapter 37, Laws 1875), which was the law in force until the amendment of 1890. By the law of 1875 the language of the first section of the law of 1862 was changed to its present form. This change consists in substituting the term "family" for "any man or woman," in the law of 1862, and would seem to indicate a change of policy as to the parties who were thereafter to be entitled to the exemption, on the part of the territorial legislature. But the insertion of section 2467 seems to negative this inference. The law of 1875 appears to have been copied substantially from the Iowa Code, except as to the amount and value of the homestead exemption, and with the exception of section 2467, which is not found in the Iowa Code. The territorial legislature evidently had some object in inserting section 2467 in the act of 1875. What was that object? The contention of respondents, that this section was intended to include a widow or widower without children, is not tenable, as they

were provided for, not only by section 2450, but by section 2463 also, which provides as follows: "Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age,"— and which section is again re-enacted in the probate court act (section 5778). But, as will be noticed, the exemption of a widow or widower under these sections was limited to the homestead occupied by the husband and wife at the time of the death of either. It would seem, therefore, that the legislature intended by section 2467 to declare that any owner or claimant whether one or more, in the actual occupancy of a homestead as defined in that act, constituted a family, within the meaning of the act. The use of the word "family" at the commencement of the section was evidently a misuse of the word, and the term "owner" or "claimant," in place of "family," would make the section more easily understood, and such evidently was the intention of the legislature. The evident object of this section was therefore to further define "family" as used in the act; and the fact that the side note to the section, as originally printed in the Laws of 1875, and retained in the Code of 1877, is "Family further defined," while not conclusive, is a circumstance of some weight in construing this section. This construction of the statute is not only consistent with, but seems to be required by, the language of other sections of the homestead law. It is provided by section 2451 "that a conveyance or incumbrance by the owner of such homestead shall be of no validity  *  *  *  if the owner is married," etc. By section 2454 it is provided that "the homestead must embrace the house used as such by the owner thereof." And section 2458 provides that "the owner or the husband or wife may select the homestead." The provisions of these sections clearly contemplate the ownership of a homestead by an unmarried man,

and indicate that the legislature did not intend to confine the privileges of the homestead exemption to married men alone. They unmistakably and obviously recognize the fact that the owner of the homestead may be unmarried. A single man may be the owner of a house, and use the same as his home, though he may be unmarried, and not the head of a family; and such house, with the defined quantity of land, would constitute his homestead. Myers v. Ford, 22 Wis. 139.

Our conclusion is that by section 2467 a single person in the occupancy of a homestead as defined in the act is a family, within the meaning of the act, and that prior to the amendment of 1890 a single person occupying a homestead as defined in the act was entitled to hold the same exempt from forced sale on execution for a debt incurred subsequently to the occupation of such homestead. We say "prior" to 1890 without intending at this time to indicate any opinion as to the effect of the act of that year amending the exemption law. How far or to what extent this section is repealed or modified by the amendment of 1890, it is not necessary now to decide, as this case is decided upon the law as it existed prior to the amendment of 1890. So far, therefore, as the demurrer is based upon the allegations of the complaint that the plaintiff was a widower, without wife or children, it should have been overruled.

But respondents further contend that as it appears from the complaint that plaintiff's homestead, claimed by him, consisted of 141 acres of his pre-emption claim, for which a patent was issued to him, and 19 acres of a government homestead claim contiguous to said 141 acres of his pre-emption claim, on which were his improvements, and upon which he was living in order to secure a government title to 160 acres of government land, he could not claim a homestead embracing said 141 acres of his pre-emption claim and said 19 acres of his government homestead claim. The counsel for the respondents state their position upon the question as follows: "That since the homestead laws of the United States (Rev. St. §§ 2290, 2291) require

an entryman or claimant of lands under the homestead laws of congress to make his home and reside on the land, a party, while thus occupying and residing upon a government homestead claim, cannot reside upon another quarter section, nor any part of it, so as to be a resident thereupon and an occupier thereof, within the meaning of the territorial or state homestead laws. When he has settled upon and is occupying lands under the homestead laws of the United States, he cannot claim other lands as exempt from levy and sale under execution, under the homestead exemption laws of the state or territory. He cannot have two homes at the same time. The plaintiff removed from the land included in this controversy to the land entered by him under the government homestead laws. He therefore abandoned all his homestead rights in the land in controversy herein, if he ever had any." We are of the opinion that the learned counsel for the respondents are correct in this contention. The part of the complaint material to the determination of this question is as follows: "(3) That on the 2d day of March, 1885, plaintiff, being a citizen of the United States, over the age of twenty-one years, and not having previously exercised his homestead rights under the government land laws of the United States, being duly qualified thereto, made homestead entry No. 1,296 in the land office at Deadwood, Dakota, * * * [describing quarter section], and immediately erected his dwelling house thereon, * * * and immediately moved into the said dwelling house, where the said plaintiff has resided continuously until the present time, and is still residing, and that the said plaintiff has done and performed all things required of him in relation to the said land by the laws of the United States. * * *" By sections 2290, 2291, referred to by counsel in their brief, it is provided that a citizen, etc., shall, upon application to the register of the land office, make affidavit "that such application is made for his exclusive use and benefit, and that his entry is made for the purposes of actual settlement and cultivation." This affidavit, it appears from the complaint, the appel-

lant must have made, as it is alleged "that said plaintiff has done and performed all things required of him in relation to said land by the laws of the United States." At the time, then, that his 141 acres were sold by the respondents upon their judgment, appellant was living upon his government homestead upon which his entry was made, "for the purposes of actual settlement and cultivation." When appellant removed from his pre-emption claim, and settled upon his government homestead, he in effect abandoned his homestead exemption right under the state law. He was, in contemplation of law, settled upon and occupying his whole quarter section of 160 acres claimed by him as his government homestead. To hold, therefore, that appellant was settled upon and occupying his government homestead for the purposes of acquiring the title thereto, and yet, that he was only occupying 19 acres thereof and 141 acres of his pre emption claim when claiming his state homestead exemptions, would involve an inconsistency, for, if he lived upon and occupied his government homestead for one purpose, he must be held to be doing so for all purposes. The two quarter sections, though contiguous, were separate and distinct tracts of land. Section 2455, Comp. Laws, provides that the homestead "may contain one or more lots or tracts of land with the buildings thereon, · * * * but must in no case embrace different lots and tracts unless they are contiguous, or unless they are habitually and in good faith used as part of the same homestead." It appears from the allegations in the complaint that the appellant claimed a specific tract of land as his government homestead, embracing 160 acres. He had no independent claim to 19 acres thereof. His settlement and occupation was either valid as to the whole quarter section, or it was not valid as to any part thereof. He cannot be permitted when dealing with the government, to say he claimed 160 acres as his government homestead, but when dealing with his creditors, that he only claimed 19 acres of the same. It is undoubt-

edly true, as claimed by appellant's counsel, that a party may, under ordinary circumstances, carve out and claim his state homestead in such manner as he may choose, provided all the land claimed is contiguous, or is in good faith used as a homestead. But this presupposes that such homestead claim is selected from lands properly subject to such selection. But, when he has settled upon and is occupying 160 acres for the purpose of acquiring title thereto from the government, he can not at the same time, for another purpose, claim that he is only occupying a small portion of the same.

We are of the opinion, therefore, that the demurrer to the plaintiff's complaint, as to the first and third grounds, stated in the demurrer, was properly sustained. The order sustaining the demurrer is therefore affirmed.